FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 06, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

PAULINE S.,[1]

           Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,

           Defendant.

No.   2:25-cv-00322 -EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

Due to a back injury, arthritis, anxiety, vertigo, a heart condition, and carpal tunnel syndrome, Plaintiff Pauline S. claims that she is unable to work fulltime and applied for disability insurance benefits.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

She appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the opinions of the examining medical sources, Dr. Massoud, PA Fine, and Dr. Genthe; the ALJ erred in imposing a residual functional capacity (RFC) at the light exertional level; the ALJ's hypothetical to the vocational expert (VE) was flawed; and the ALJ improperly assessed Plaintiff's credibility. As is explained below, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

In November 2019, Plaintiff filed applications for benefits under Title 2, claiming disability beginning January 28, 2016, based on the physical and mental impairments noted above.[2]

After the agency denied Plaintiff benefits, ALJ Palachuk held a telephone hearing in May 2022, at which Plaintiff appeared with her representative.[3]  Plaintiff and a vocational expert testified.[4]  After the

---

[2] AR 272.

[3] AR 97-121.

[4] *Id.*

hearing, ALJ Palachuk issued a decision denying benefits.[5] Plaintiff filed a timely appeal and the Appeals Council denied her claim.[6] Plaintiff then filed suit in this Court, and after consideration, the Court remanded the case for further proceedings.[7] The Appeals Council issued an Order remanding the case to a hearing office, consistent with the Court's decision.[8]

On March 19, 2025, Plaintiff and her attorney appeared via video for a hearing before ALJ Evangeline Mariano-Jackson ("the ALJ").[9] Plaintiff and a vocational expert testified at the hearing.[10] After the hearing, the ALJ issued a decision denying benefits.[11]

---

[5] AR 14-35.  Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[6] AR 1-6, 266.

[7] AR 2164-2188, 2189.

[8] AR 2190-2194.

[9] AR 2086-2022.

[10] Id.

[11] AR

DISPOSITIVE ORDER - 3

The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[12] As to medical opinions, the ALJ found:

- The opinions of state agency evaluators Louis Martin, MD, and Myron Watkins, MD, to be not persuasive.

- The 2018 opinions of consultative examiner Ryan Massoud, DO, to be not persuasive.

- The 2020 opinions of consultative examiner David Fine, PA-C, to be partially persuasive.

- The November 2020 opinions of consultative examiner Thomas Genthe, PhD, to be persuasive.

- The January 2018 opinions of consultative examiner Dr. Genthe to be not persuasive.

- The opinions of state agency evaluators Eugene Kester, MD, and Julian Lev, PhD, to be persuasive.

The ALJ also found the third-party function report completed by Plaintiff's spouse to be not entirely consistent with the medical

---

[12] AR 2049-2050.

DISPOSITIVE ORDER - 4

evidence of record.[13] As to the sequential disability analysis, the ALJ found:

- Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2021.

- Step one: Plaintiff had not engaged in substantial gainful activity from January 28, 2016, the alleged onset date, through March 31, 2021, her date last insured.

- Step two: Plaintiff had the following medically determinable severe impairments: coronary artery disease, status post surgery; bilateral hand osteoarthritis; bilateral carpal tunnel syndrome; degenerative joint disease of lumbar spine and radiculopathy; morbid obesity; anxiety; and agoraphobia.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

---

[13] AR 2050-2057.

- RFC: Plaintiff had the RFC to perform light work with the following exceptions:

  lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours out of an 8-hour day, and sit 6 hours out of an 8-hour day with normal breaks. Occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and/or stairs; can never climb ladders, ropes, or scaffolds; occasionally push and/or pull with the bilateral upper and lower extremities; occasionally reach overhead with the bilateral upper extremities; frequently but not constantly handle, finger, and feel with the bilateral upper extremities; can never be exposed to vibration or extreme cold/heat; can tolerate occasional exposure to fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants; can never work at unprotected heights or around moving mechanical parts or heavy machinery; can understand, remember, and carryout simple instructions; can deal with less than occasional changes in a routine work setting; and can tolerate occasional interaction with the public.

- Step four: Plaintiff has no past relevant work.

- Step five: in the alternative, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a cleaner, housekeeper (DOT 323.687-

DISPOSITIVE ORDER - 6

014), garment folder (DOT 789.687-066), and conveyor line bakery worker (DOT 424.687-022).[14]

Plaintiff timely requested review of the ALJ's decision by this Court.[15]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[16] and such error impacted the nondisability determination.[17] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

---

[14] AR 2041-2058.

[15] ECF No. 1.

[16] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[17] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 404.1520(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

DISPOSITIVE ORDER - 7

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18]

### III. Analysis

Plaintiff seeks relief from the denial of disability on four grounds. She argues the ALJ erred when evaluating the medical opinions, in imposing an RFC at the light exertional level; ;in formulating an incomplete hypothetical to the VE, and when evaluating Plaintiff's subjective complaints. As is explained below, the Court concludes that the ALJ erred in her evaluation of the medical opinion evidence and that the ALJ's analysis contains consequential error.

---

[18] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

DISPOSITIVE ORDER - 8

**A.    Medical Opinions: Plaintiff establishes consequential error**

Plaintiff argues the ALJ erred in her evaluation of the medical opinions.[19]  Specifically, Plaintiff argues that the ALJ erred in failing to address the opinions of Dr. Genthe that Plaintiff would have difficulty obtaining and maintaining employment, and provided flawed reasoning when discounting PA Fine's opinions limiting Plaintiff to sedentary work.

   1.    <u>Standard</u>

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[20] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include,

---

[19] An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. § 404.1520c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[20] 20 C.F.R. § 404.1520c(a), (b).

but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[21] Supportability and consistency are the most important factors,[22] and the ALJ must explain how she considered the supportability and consistency factors when reviewing the medical opinions and support her explanation with substantial evidence.[23] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[24]

---

[21] *Id.* § 404.1520c(c)(1)–(5).

[22] *Id.* § 404.1520c(b)(2).

[23] *Id.* § 404.1520c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

[24] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

### 2. Plaintiff's Testimony

#### a. *2022 Testimony*

On May 12, 2022, Plaintiff appeared with her attorney for a telephone hearing before ALJ Palachuk.[25]  Plaintiff testified, and vocational expert, William Weiss, testified.[26]  Plaintiff testified that at the time of the hearing she was fifty years old and that she had completed to the seventh grade and only attended one month of classes in the eighth grade before dropping out.[27]  She said she did not get a GED and had been married since 2002.[28] She was living with her husband, her nineteen-year-old daughter, and her nineteen-year-old niece.[29]  She said that in 2016 she was working full-time but left that job when she went for a test and was sent for open-heart surgery.[30]

---

[25] AR 97-121.

[26] *Id.*

[27] AR 102.

[28] *Id.*

[29] *Id.*

[30] AR 103.

DISPOSITIVE ORDER - 11

Plaintiff said she tried to return to work at Home Depot in 2017 but was always nauseated and lightheaded due to the medication and could not do the job.[31]  She said that she is still taking the medication.[32] Plaintiff said that the medication still makes her nauseated, lightheaded, and dizzy and that she needs to sit for a little while, but that it has less side effects than other medications tried.[33] She said that the dizziness lasts most of the day but she takes it at night now so she is not as a nauseated but still has dizziness.[34] Plaintiff said that she will spend a typical day eating breakfast, doing laundry, and then feeding the dogs but that she cannot lift the bag of dog food.[35]

Plaintiff said she has a short attention span and has had problems lifting things and changed her plates to lighter plates because

---

[31] *Id.*

[32] *Id.*

[33] AR 104.

[34] AR 104-105.

[35] AR 105.

DISPOSITIVE ORDER - 12

she was dropping things.[36]  Plaintiff said she can lift a gallon of milk with both hands but could not do that multiple times, and that she would need to take a breath after walking about half a block.[37] Plaintiff said she has swelling in her legs which is worse at night and that she takes water pills but needs to elevate her feet for about an hour three times a week.[38]  She said that when she sits she has to elevate her feet or they get "poofy."[39]

Plaintiff testified that her family cooks and that everyone cleans, and that she has problems with her grip where things will slide out of her hands.[40] She said she has problems with fine manipulation and gets help from her family.[41] Plaintiff said she gets very anxious being around people and that her doctor gave her something to make her less

---

[36] AR 106.

[37] AR 107.

[38] AR 108-109.

[39] AR 109.

[40] *Id.*

[41] AR 110.

DISPOSITIVE ORDER - 13

anxious to shop but it does not always work and four times in the last four months she has had to leave the store and go wait for her family in the car.[42]  She said she goes shopping twice a month and that when she has a panic attack she get sweaty, nauseated, anxious, and overwhelmed.[43]  Plaintiff said the panic attacks started after her heart surgery.[44]

Plaintiff said her attention is limited and she cannot watch a thirty-minute show and can only read about one page, and has taken Omega 3 supplements.[45]  Plaintiff said that she and her family use post it notes and a board in the kitchen to write down reminders for her.[46] She said she can only exert herself for about fifteen to twenty minutes and then needs a break.[47]  While on the phone for the hearing, she had

---

[42] AR 111.

[43] *Id.*

[44] *Id.*

[45] AR 112.

[46] *Id.*

[47] AR 113.

shifted position and propped her leg up.[48]  Plaintiff said she still has back pain when she bends or turns and was in physical therapy.[49]  She said she cannot lift over her head.[50]

    b.    *2024 Testimony*

On March 19, 2025, Plaintiff and her attorney appeared via video for a hearing before ALJ Evangeline Mariano-Jackson.[51] The ALJ advised Plaintiff to relate her answers to questions to the period of January 28, 2016, through March 31, 2021.[52] Plaintiff testified that she completed the seventh grade and one month of eighth grade and had no further education.[53] She was born in 1971 and was presently 53 years old.[54] She is married and has 5 children but only her 22 year-old

---

[48] *Id.*

[49] AR 113-114.

[50] AR 114.

[51] AR 2086-2134.

[52] AR 2090-2091.

[53] AR 2091.

[54] AR 2092.

DISPOSITIVE ORDER - 15

daughter is at home with her and her husband.[55] In the relevant period, her niece also lived with her.[56] She stopped working in 2015 when she had open heart surgery and could not use her arms afterwards and her medication made her nauseated.[57]

She said that during the relevant period she could lift a gallon of milk but would drop things and that her hands were hard to open and close.[58] She said that her problems using her hands have worsened but even then she dropped things and was not able to pick up a coin from a table.[59] She said she does not wear button up shirts and that her husband had to hook her bra for her.[60] She gets swelling in her hands, fingers, and joints, and that she felt tingling and numbness when she

---

[55] *Id.*

[56] AR 2093.

[57] *Id.*

[58] AR 2094.

[59] AR 2095.

[60] AR 2096.

used them.[61] She said that she could use her hands for 10 minutes before resting them and that she wore braces at night.[62]

Plaintiff said she could stand for up to 15 minutes before having to sit down due to pain her back caused from lumbar spine injuries sustained in an auto accident.[63] She said she suffered from pain and numbness radiating from her low back/buttocks and down her leg.[64] She said she could walk for about one block and could sit for about 20 minutes without needing to get up and move around.[65] She had swelling in her legs and ankles during the relevant period at issue and took furosemide[66] (Lasix) to reduce the swelling in her legs but said it

---

[61] AR 2096-2097.

[62] AR 2097.

[63] AR 2098.

[64] *Id.*

[65] AR 2099.

[66] Plaintiff incorrectly identified the medication as fluoxetine.

only partially helped.[67] She would also have to sit with her feet elevated at times above waist level.[68]

Plaintiff testified that she must change positions throughout the day and alternates between sitting, standing, and walking every 15 minutes.[69] She said that in an average week she had to lay down twice due to back pain.[70] She said that during the relevant period her husband, daughter, and niece would help with the household chores such as cooking, cleaning, and caring for the dog.[71] She said they lifted heavy things such as dog food and that her husband and daughter accompany her when she shops.[72]

---

[67] AR 2100.

[68] *Id.*

[69] AR 2101.

[70] *Id.*

[71] AR 2101-2102.

[72] AR 2102.

Plaintiff said that he gets dizzy and has to hold onto a bar in the shower and that she was not able to stoop or squat due to back pain.[73] Plaintiff also testified that she had poor sleep in the relevant period due to pain and sleep apnea.[74] She said she had to get up three times a night and move around due to back pain and that she would be tired and have to take naps daily.[75]

Plaintiff testified that she was anxious in crowds and that twice a week she had to leave stores and go home, despite the fact that she was taking medication for anxiety.[76] Her medication helped a little but she still had problems with anxiety and focusing.[77] She could not watch a full TV show or read a book and had to put a board with reminders in her kitchen.[78] She was taking aspirin, meclizine, meloxicam,

---

[73] AR 2103.

[74] AR 2104.

[75] AR 2104-2105.

[76] AR 2105.

[77] AR 2105-2106.

[78] AR 2106.

hydrochlorothyzide, metrorolol, Lipitor, furosemide, potassium, and nitrogylcerin as needed.[79] She also used Volaren cream on her hands but could not take other pain medications due to her heart condition.[80] She also uses hot backs, ice, and hot packs for pain.[81] Plaintiff said that during the hearing she had to change position several times.[82]

Plaintiff stated that since her open-heart surgery she had been treated with medication only and did not think she had any symptoms.[83] She was not sure if her fatigue was related to her heart and described it as being tired and weak throughout the day.[84]

---

[79] *Id.*

[80] AR 2107.

[81] *Id.*

[82] *Id.*

[83] AR 2109.

[84] AR 2109-2110.

DISPOSITIVE ORDER - 20

### 3. Relevant Medical Records

On September 11, 2019, Plaintiff presented to Matthew Hardy, DO, with complaints of issues with her hands.[85]  She said that she had problems with her hands for the last year, they had recently worsened significantly, she could not grasp things without pain, and she had to use a heating pad for pain.[86]  On examination, she had decreased grip strength.[87]  Plaintiff also had a positive Tinel's sign and Phalen's sign, left worse than right, and was diagnosed with carpal tunnel syndrome, bilaterally and prescribed braces.[88]

On February 6, 2020, Plaintiff presented to Dr. Hardy for follow-up and with complaints of imbalance.[89]  On examination, Plaintiff had

---

[85] AR 701.

[86] *Id.*

[87] *Id.*

[88] AR 704.

[89] AR 695.

DISPOSITIVE ORDER - 21

a positive Tinel's sign and Phalen's sign, left worse than right, and was diagnosed with carpal tunnel syndrome.[90]

On November 14, 2020, Plaintiff presented to David Fine, PA, at the request of the Commissioner for a consultative examination.[91] Plaintiff reported a history of open-heart surgery 4 years prior; mid and low back pain since 2000 after fracturing her L1, L2, and L3 vertebrae in an MVA; and bilateral hand pain progressively worsening since 2018.[92] On examination, Plaintiff's gait was non-antalgic and she was able to squat to 3/4; there were gross deformities in her hands and they appeared arthritic; the grip in her left hand was slightly decreased; range of motion in the shoulders was slightly decreased, and range of motion was decreased in her knees, hips and lumbar spine.[93]

---

[90] *Id.*

[91] AR 1065-1075.

[92] AR 1065-1066.

[93] AR 1067-1071.

On December 28, 2020, Plaintiff presented to Dr. Hardy with complaints of numbness and tingling in her hands.[94] On examination, Plaintiff had positive Tinel's sign. [95] Dr. Hardy ordered an EMG and nerve conduction study.[96]  On January 11, 2021, Plaintiff was seen at Columbia Physical Therapy, and it was noted that she had symptoms consistent with carpal tunnel syndrome and had also demonstrated nerve involvement on her cervical spine in a recent test.[97]  On examination, Plaintiff had diminished sensation on the right, reduced grip on right, positive Phalen's and reverse Phalen's bilaterally, and positive Spurling's on the right.[98]

At a January 11, 2021 physical therapy appointment, Plaintiff was noted to report significant wrist pain, right greater than left.[99]

---

[94] AR 1086.

[95] *Id.*

[96] *Id.*

[97] AR 1201.

[98] *Id.*

[99] AR 1200.

Lateral pinch was significantly diminished on the right; sensation was diminished to light touch over the C4-8, and T1 dermatomes on the right; Phalen's sign was positive on the right and left; Reverse Phalen's was positive on the right and left; and Spurling's Maneuver was positive on the right only.[100] It was noted that Plaintiff demonstrated decreased range of motion and strength in her wrists bilaterally.[101]

On February 25, 2021, Plaintiff underwent a nerve conduction study which was slightly abnormal with finding of C8-T1 radiculopathy without evidence of ongoing denervation.[102]  An MRI was recommended to assess possible nerve root impingement at C7-T1 or T1-T2.[103]

On March 8, 2021, Plaintiff presented to Dr. Hardy, who noted on examination that she had cervical radiculopathy bilaterally with spurring, and positive Faber's on right.[104]  Dr. Hardy referred Plaintiff

---

[100] AR 1201.

[101] *Id.*

[102] AR 1144-1145, 1183.

[103] *Id.*

[104] AR 1163.

DISPOSITIVE ORDER - 24

to a physiatrist and requested an MRI of the cervical spine.[105]  An X-ray on the same day indicated degenerative disc disease at C3-T1, with small osteophytes from C4 to C7.[106]

Although not directly relevant to the period at issue, Plaintiff was noted in 2024 by Nina Flavin, MD, to have advanced deformity of her hands with "classic Heberden nodes" in both hands as well as enlarged PIP joints, and erosion of the second metacarpal head, and an "overall pattern of erosion" that was "most consistent with osteoarthritis, as there is degenerative narrowing and osteophyte formation in the IP joints."[107]

4.    Analysis

The Court will address the ALJ's evaluation of both PA Fine's opinions regarding both lifting and carrying, and standing/walking/sitting, and Dr. Genthe's mental-health opinions.

---

[105] AR 1164.

[106] AR 1179.

[107] AR 3326.

a.    *The ALJ's consideration of PA Fine's opinions regarding Plaintiff's ability to lift, carry, stand, sit, and walk*

PA Fine examined Plaintiff on November 14, 2020.[108]  PA Fine's findings were that Plaintiff was able to rise and sit without problem and had a non-antalgic gait.[109]  PA Fine noted that Plaintiff could make a fist and could pick up a paperclip, but noted that her hands had a gross deformity and showed outward signs of arthritis and that her grip was slightly decreased on the left.[110]  PA Fine also noted a mild to moderate lordosis in the lumbar spine, as well as decreased range of motion; slightly decreased range of motion of the hips; and normal range of motion in the knees and ankles.[111]  Straight leg raising was positive on the right in the supine position.[112]PA Fine diagnosed

---

[108] AR 1066-1074.

[109] AR 1067-1068.

[110] AR 1068-1069.

[111] AR 1070-1071.

[112] AR 1070.  The straight leg raise test, also called the Lasegue test, is a fundamental maneuver during the physical examination of a patient

Plaintiff with degenerative joint disease of the lumbar spine and bilateral hand pain and stiffness.[113]  PA Fine opined that Plaintiff would be limited to standing for 4 hours, walking 5 hours, and sitting 6 hours based on degenerative joint disease with radiculopathy.[114]  PA Fine opined that Plaintiff would be limited to lifting and carrying no more than 15 pounds occasionally and 5 pounds frequently based on her hand pain and stiffness.[115]

The ALJ found PA Fine's opinion partially persuasive and in doing so stated the following reasoning:

> Examination of the claimant's upper extremities was remarkable for arthritic appearing hands bilaterally (Ex.

with lower back pain. It aims to assess for lumbosacral nerve root irritation. This test can be positive in a variety of conditions, though lumbar disc herniation is the most common. National Institute of Health, Straight Leg Raise Test - StatPearls - NCBI Bookshelf. www.ncbi.nlm.nih.gov. (last viewed March 3, 2026).

[113] AR 1071.

[114] AR 1073.

[115] *Id.*

DISPOSITIVE ORDER - 27

10F-4). Nevertheless, the claimant could touch her thumb to all fingertips on both hands, make a fist bilaterally, use either hand to pick up paperclips from a flat surface, button buttons, and zip zippers. Bilateral finger motion was within the normal limits. While left grip strength was slightly decreased (Ex. 10F-5), light touch sensation remained intact.

Taken as a whole, Mr. Fine assessed degenerative joint disease of the lumbar spine with radiculopathy and bilateral hand pain/stiffness (Ex. 10F-7). Mr. Fine opined that the claimant can lift/carry fifteen pounds occasionally and five pounds frequently, stand/walk four hours in an eight-hour workday with a likely ability to stand for two hours at a time, walk five hours in an eight-hour workday with a likely ability to walk for one hour at a time, and sit six hours in an eight-hour workday with a likely ability to sit for three hours at a time (Ex. 10F-9). He further indicated that the claimant's ability to grip, handle, finger, and feel was "good."

The undersigned has considered Mr. Fine's opinion, and she found it partially persuasive when determining the above residual functional capacity. She first notes that Mr. Fine observed that the claimant's hands appeared crooked (Ex. 10F-2) and arthritic in appearance bilaterally (Ex. 10F-4). Nevertheless, the claimant could touch her thumb to all fingertips on both hands, make a fist bilaterally, use either hand to pick up paperclips from a flat surface, button buttons, and zip zippers. Bilateral finger motion was within the normal limits. While left grip strength was slightly decreased (Ex. 10F-5), light touch sensation remained intact.

While the undersigned agrees that lifting/carry limitations are warranted (in part) by the claimant's hand functioning, she does not agree that Mr. Fine's findings preclude the claimant from light exertional level work. As noted by Mr. Fine, the claimant demonstrated only slightly decreased grip strength and otherwise remained capable of tasks requiring

dexterity. When reviewing the cumulative record, the undersigned noted that February 2021 electrodiagnostic testing was negative for any evidence of left or right median neuropathy, ulnar neuropathy, or peripheral neuropathy (Ex. 14F-33). Accordingly, the undersigned has limited the claimant to light exertional level work with frequent handling, fingering, and feeling with the bilateral upper extremities.[116]

The ALJ then further reasoned that PA Fine's opinions as to Plaintiff's ability to sit, stand, and walk were not persuasive. The ALJ went on to provide the following reasoning:

> Turning to the remainder of Mr. Fine's opinion, that the claimant can stand/walk four hours in an eight-hour workday (with a likely ability to stand for two hours at a time), walk five hours in an eight-hour workday (with a likely ability to walk for one hour at a time), and sit six hours in an eight-hour workday (with a likely ability to sit for three hours at a time) (Ex. 10F-9), the undersigned finds it unpersuasive as it is unsupported by Mr. Fine's noted examination findings and the cumulative record. As noted by Mr. Fine, the claimant was ambulatory with a non-antalgic gait and capable of transitioning on and off the examination table without assistance (Ex. 10F-3).
>
> When asked, the claimant demonstrated a full range of cervical motion (Ex. 10F-6). No pain was elicited with palpation. The claimant demonstrated decreased ranges of lumbar motion (Ex. 10F-6). Mild to moderate lordosis of the lumbar spine was noted; however, no pain was elicited with palpation. Straight leg testing was positive on the right at

---

[116] AR 2051-2052.

seventy degrees in the supine position.  Mild lower extremity discomfort was noted with lumbar range of motion testing (Ex.10F-7).[117]

The Court finds that the ALJ's reasoning is deficient both as to PA Fine's opinions regarding lifting and carrying, and PA Fine's opinions regarding standing, walking, and sitting. Regarding Plaintiff's ability to lift and carry, the ALJ ignores the crucial fact that on examination PA Fine found that Plaintiff had an obvious deformity in her hands indicating at least moderate arthritis.   This is consequential because that objective finding supports PA Fine's opinions regarding Plaintiff's limitation to lifting and carrying no more than 15 pounds.

The ALJ erred in her analysis of the consistency factor when evaluating PA Fine's opinions.  While the ALJ recited that Plaintiff retained a certain level of dexterity in her hands, she failed entirely to discuss the fact that PA Fine found weakness in Plaintiff's wrists.  A lifting and carrying restriction would not be primarily dependent upon dexterity, but rather on strength.  PA Fine's examination indicated

---

[117] AR 2052.

DISPOSITIVE ORDER - 30

decreased strength in Plaintiff's wrists and hands, as well as decreased grip. The fact that Plaintiff had decreased grip even when lifting a light object such as a paperclip or button would support PA Fine's opined limitation to lifting and carrying less than 20 pounds, rather than contradict it.

Similarly, the ALJ's reasoning as to the consistency of PA Fine's opined standing, walking, and sitting limitations is flawed. While the ALJ properly recites that Plaintiff's examination indicated decreased range of motion in the lumbar spine, mild to moderate lordosis of the lumbar spine, and a positive straight leg raising, she fails to acknowledge that based on those findings PA Fine diagnosed degenerative joint disease of the lumbar spine with radiculopathy.[118]

> Straight leg raising is indicative of a nerve root impingement.[119] As noted previously, there is no indication that the ALJ has medical training which would allow her to interpret the raw medical data and make her own medical

---

[118] AR 1071.

[119] *See*, fn 112.

assessment of the functional limitations caused by Plaintiff's nerve root impingement.[120]

The ALJ's reasoning is also flawed as to the supportability factor. Plaintiff's treatment for carpal tunnel was first noted on September 11, 2019, when she first reported to Dr. Hardy that she had pain in her hands since approximately September 2018 but it had significantly worsened recently and he found her positive for Tinel's and Phalen's signs.[121]  In the following two years, Plaintiff was noted on several occasions to have positive Tinel's signs and Phalen's sign and an objective nerve conduction study confirmed the diagnosis of carpal tunnel syndrome.[122]  Rather than discuss those findings, the ALJ

---

[120] ALJs cannot usurp the role of doctors when interpreting medical evidence, particularly highly technical medical evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017).

[121] AR 701.

[122] AR 1021.

recited only one nerve conduction test performed in 2021.[123] Moreover, the ALJ failed to address the fact that later examinations and diagnostic testing confirmed the advancement of Plaintiff's osteoarthritis and neuropathy, which resulted in further deformity to her hands and loss of sensation in her hands.[124]

In short, the medical record is clear that in 2021, when examined by PA Fine, Plaintiff suffered from carpal tunnel syndrome bilaterally, as well as a least a moderate deformity to her metacarpal joints due to osteoarthritis. While the record is clear that Plaintiff's ability to use her hands was extremely limited by 2023 and 2024, it is less clear what Plaintiff's ability was to handle and finger in 2021, prior to her date last insured.

The Court concludes that remand is warranted for the ALJ to properly develop the record and to obtain medical expert testimony as to Plaintiff's physical limitations during the period at issue.

---

[123] AR 2052.

[124] AR 3326.

### b. *The ALJ's consideration of Dr. Genthe's 2020 opinions*

Dr. Genthe rendered two opinions regarding the limitations assessed as a result of Plaintiff's mental impairments, the first in January 2018[125] and the second in November 2020.[126] In her prior appeal to this Court, Plaintiff's arguments focused on the latter November 2020 opinions, and the Court addressed only Dr. Genthe's 2020 opinions. Plaintiff alleged that the ALJ erred by finding that Dr. Genthe's November 2020 opinions were persuasive but then formulating an RFC in conflict with Dr. Genthe's opinion that until her condition was adequately treated with medication Plaintiff did not appear to be adequately targeting interfering symptoms, which are likely to interfere with her ability to initiate or maintain future employment.[127]

In the prior Order remanding the case for further proceedings, the Court directed that the ALJ more properly articulate her

---

[125] AR 614-618.

[126] AR 1076-1081.

[127] AR 2164-2188.

DISPOSITIVE ORDER - 34

consideration of Dr. Genthe's statement that Plaintiff would have limitations in her ability to obtain and maintain employment until her symptoms were better managed with medication.[128] The Court notes that development of the record appears warranted, because Dr. Genthe offered inconsistent findings regarding Plaintiff's content of thought. He noted in one sentence that Plaintiff displayed no disturbance in reality testing, and had speech free from delusional thinking, psychotic processes, or atypical preoccupations.[129] Dr. Genthe noted in the following sentence, however, that reality testing was impaired, with fragmented speech that was reflective of delusional thinking, psychotic processes, and atypical preoccupations.[130]

The ALJ addressed Dr. Genthe's November 2020 opinion as follows:

> Taken as a whole, Dr. Genthe assessed agoraphobia (Ex. 11F-5). Additional notations read, "Based on general observations and her mental status, [Pauline] is likely able to understand and remember short, simple instructions. She is unlikely able

---

[128] AR 2186.

[129] AR 1079.

[130] *Id.*

to understand and remember detailed instructions. She is likely able to carry out short, simple instructions in a reasonable amount of time. She is likely unable to carry out detailed or complicated instructions in a reasonable amount of time. She is likely able to maintain attention and concentration for brief periods of time, but unlikely for extended periods of time. She is likely able to perform simple work-like activities at a consistent pace. She is unlikely able to respond appropriately to changes in the work setting. She is able to maintain a regular work schedule and complete a normal 40-hour work-week based on the aforementioned criteria" (Ex. 11F 5-6).[131]

Plaintiff is correct that the ALJ did not address the fact that Dr. Genthe opined that Plaintiff's symptoms are likely to interfere with her ability to obtain and maintain employment.  Additionally, the ALJ recited Dr. Genthe's statement that Plaintiff's thought content was abnormal but did not address the inconsistent prior statement that it was not.

To the extent that the Court has remanded the case for consideration of PA Fine's opinions, the ALJ will be required to reconsider the medical opinions in general.  The Court suggests that the ALJ more properly articulate his or her findings regarding the

---

[131] AR 2055.

supportability and consistency of Dr. Genthe's opinions and specifically address Dr. Genthe's statement that Plaintiff would have limitations in her ability to obtain and maintain employment.

### 5. Summary

Because the ALJ did not give good reasons for her evaluation of the medical opinions in the record, a remand is warranted.  On remand, the ALJ is directed to properly consider the medical evidence and, to develop the record further by ordering a consultative examination or calling a medical expert to testify as to Plaintiff's physical and mental impairments.

**B.    Plaintiff's Subjective Complaints, Step-Five Findings and Formulated RFC: The Court finds these issues moot.**

Plaintiff argues the ALJ failed to properly assess her subjective complaints.  As discussed above, the ALJ failed to consider the medical record as a whole when considering the medical opinions.  Because the Court has remanded the case for consideration of the record as a whole, the ALJ will be required to consider the credibility of Plaintiff's subjective complaints, to formulate an RFC based on those finding and to make findings at Step Five.

## C.     Remand for Further Proceedings

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[132] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[133]

The Court finds that further development of the record is necessary for a proper disability determination. The ALJ should obtain medical expert testimony, properly consider the opinion evidence and testimony, and make findings at each of the five steps of the sequential evaluation process.

---

[132] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[133] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595  ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 16 and 18**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 6th day of March, 2026.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge